*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ISAAC ALEXANDER,

Defendant-Appellant.

UNPUBLISHED
August 12, 2021

No. 350816
Wayne Circuit Court
LC No. 18-008418-01-FH

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felonious assault, MCL 750.82, obstructing a police officer, MCL 750.81d(1), felon in possession of a firearm (felon-in-possession), MCL 750.224f, domestic violence, MCL 750.81(2), and three counts of possession of a firearm during the commission of a felony, second offense, (felony-firearm) MCL 750.227b(1). The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 2 to 15 years' imprisonment for the felonious assault, obstructing a police officer, and felon-in-possession convictions; 30 days in jail, time served, for the domestic violence conviction; and five years' imprisonment for each felony-firearm conviction.

On appeal, defendant alleges that defense counsel failed to provide effective assistance of counsel, the jury instructions were deficient, the prosecutor engaged in misconduct, there was insufficient evidence to sustain his convictions, and that his sentences were disproportionate. We affirm.

## I. BACKGROUND FACTS

During an evening out with another couple, defendant and his girlfriend, Starr Rivers, began arguing over a bracelet that Rivers found in defendant's vehicle that did not belong to her. In a lot adjacent to Rivers's home, the argument escalated into a physical altercation after Rivers threw water on defendant.

Several neighbors witnessed the altercation. Rivers and defendant were hitting each other, and defendant eventually wrestled Rivers to the ground where he continued to assault her while

-1-

controlling her movement by grasping her hair. One neighbor yelled at defendant to stop and Rivers screamed. Dattahn Wade, an off-duty Detroit Police Officer, was visiting a nearby home and walked to the area where he heard Rivers and the neighbors yelling.

Rivers was licensed to carry a handgun, but defendant had control of her gun. Officer Wade heard Rivers crying and repeatedly screaming "you're going to shoot me." Officer Wade saw defendant pointing a gun at Rivers's head and yelling something at her. A neighbor, Larry Crane, Jr., also saw defendant pressing a gun to Rivers's head and stating he would kill her. Officer Wade identified himself, displayed his badge, and ordered defendant to drop the gun, but defendant continued to threaten Rivers. Officer Wade shot defendant twice.

According to Officer Wade, the gun flew into the air. Crane, however, heard defendant ask why the officer had shot him as he did not have a gun. Claude Johnson, who was with defendant and Rivers that night, also heard defendant ask why the officer shot him. Johnson testified that he did not see defendant with a gun to Rivers's head before Officer Wade shot defendant, that both defendant and Rivers were standing before Officer Wade shot defendant, and that defendant had his hands up in the air in response to Officer Wade's command that he drop the weapon.

Rivers confronted Officer Wade before leaving the scene to drive defendant to the hospital. Multiple calls to 911 regarding the incident brought additional police officers to the area. During her 911 call after the shooting, Williams reported that "this guy was jumping on . . . this girl, and a guy that's a police officer told him to stop and he didn't stop." In his 911 call, Officer Wade initially reported that defendant had left the scene and had "the pistol that he used in this incident" on him. During the call, however, it appears the gun was located and Officer Wade states it was "exactly where he threw it."

The police arrived and recovered the gun and two shell casings that came from Officer Wade's weapon. A forensic biologist, who analyzed Rivers's firearm, located a DNA mixture on it. Due to the small amount of DNA, the expert explained her result was "uninformative" as it was just twenty times more likely than not that defendant's DNA along with that of another individual was on the gun rather that the DNA of two unrelated individuals.

## II. INEFFECTIVE ASSISTANCE

Defendant argues that defense counsel failed to provide effective assistance because counsel did not call Rivers as a witness, advised defendant not to testify, had a conflict of interest, and wrongly stipulated that defendant was ineligible to possess a firearm.[1] We disagree.

Although defendant filed a motion for remand, this Court denied his request "without prejudice to a case call panel . . . determining that remand is necessary . . . ." *People v Alexander*, unpublished order of the Court of Appeals, entered October 7, 2020 (Docket No. 350816).[2] When

---

[1] We note that defendant also argues that counsel was ineffective for additional reasons that will be addressed later in this opinion.

[2] Remand is unnecessary because the issue can be decided on the record presented.

there has been no evidentiary hearing to develop a claim of ineffective assistance of counsel, our review is limited to errors apparent from the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). Whether an attorney provided ineffective assistance is a mixed question of law and fact. *Id*. at 242. Issues of constitutional law are reviewed de novo, while questions of fact are reviewed for clear error. *Id*.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. "An accused's right to counsel encompasses the right to the 'effective' assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). In order to prevail on such a claim, a defendant must show (1) "that counsel's performance was deficient," and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). Defense counsel's performance is deficient if "it fell below an objective standard of professional reasonableness, and [deemed prejudicial if] . . . it is reasonably probable that, but for counsel's ineffective assistance, the result of the proceeding would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

## A. RIVERS AS A WITNESS

Defendant argues that defense counsel's performance was deficient because he failed to call Rivers as a witness. Rivers submitted an affidavit stating that she was aggressive in trying to fight defendant, that defendant disarmed her but did not point a weapon at her, that defendant never held a gun to her head or threatened to kill her, and that defendant was standing with his hands in the air when the police officer shot him.[3] Rivers further stated that defense counsel issued a subpoena to her, informed her that she was not needed as a witness, and, if he decided to use her, he would call her. He never called.

Defendant submitted an affidavit, averring that he asked defense counsel to call Rivers as a witness. But counsel decided that Rivers's testimony was not needed because Johnson testified that defendant's hands were raised when the officer shot.

The record reflects that although Rivers was included on the prosecution's initial witness list, she was not designated as a trial witness on the prosecution's amended witness list. At trial, in defendant's presence, defense counsel mentioned that the prosecution was not going to call Rivers to testify and that defense counsel had no witnesses to present. After the prosecution rested, defense counsel reiterated that he had no witnesses, and, later, defense counsel rested without presenting witnesses.

---

[3] Ordinarily, parties are not permitted to expand the record on appeal. *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). But we may consider exhibits provided by a defendant requesting remand for a post-conviction hearing on ineffective assistance of counsel. See *People v Moore*, 493 Mich 933, 933; 825 NW2d 580 (2013).

" '[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy,' which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004), quoting *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). A claim of ineffective assistance of counsel premised on the failure to call a witness is analyzed under the same standard as all other ineffective-assistance-of-counsel claims. *People v Jurewicz*, 506 Mich 914, 914; 948 NW2d 448 (2020).

In this case, Rivers's proposed testimony could have contradicted the testimony of Officer Wade and Crane, and helped defendant with his defense for felonious assault. Rivers's proposed testimony mirrored Johnson's testimony that he did not see defendant point a gun at Rivers and that defendant's hands were raised when Officer Wade shot.[4] But, in contrast to Johnson, Rivers would have placed her gun in defendant's hand, potentially incriminating him with regard to the felon-in-possession and felony-firearm charges. Further, if called to testify, Rivers would have been cross-examined about the day's events and her tumultuous relationship with defendant.[5] Finally, had Rivers testified, defense counsel could not have argued that Rivers's absence created a reasonable doubt that defendant was guilty.[6]

Review of the record establishes that defense counsel made an intentional, strategic decision not to call Rivers and to proceed with Johnson. That counsel's strategy failed "does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Because defendant has failed to show that defense counsel's decision not to call Rivers as a witness was not borne from sound trial strategy, he is not entitled to relief.

## B. DEFENDANT AS A WITNESS

Defendant argues that defense counsel provided ineffective assistance for advising him to not testify.

"A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Although counsel must advise a

---

[4] Had the jury determined that Johnson's testimony was credible, it should have found defendant not guilty of felonious assault, and possibly felon-in-possession, along with the counts of felony-firearm predicated on those felonies.

[5] The prosecution filed a notice of intent to introduce other-acts evidence, under MCL 768.27b, relating to prior instances of domestic abuse by defendant against Rivers. Crane indicated that the neighbors called defendant and Rivers "Ike and Tina," referencing Ike and Tina Turner, due to "the volatility of their relationship."

[6] Defense counsel's decision regarding the defense to be pursued is likewise a matter of trial strategy. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). And a reviewing "court cannot conclude that merely because a trial strategy backfires, effective assistance of counsel is denied." *People v Strong*, 143 Mich App 442, 449; 375 NW2d 335 (1985). Instead, "[d]efense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich App at 242 (citation omitted).

defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011) (citations omitted). See also MRPC 1.2(a) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, with respect to . . . whether the client will testify . . . ."). Thus, "[i]f the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). Even so, trial counsel's advice to a defendant regarding whether to testify can establish the basis for a claim of ineffective assistance, depending on the nature of the advice and the corresponding trial strategy. See *People v Alderete*, 132 Mich App 351, 360; 347 NW2d 229 (1984) ("The decision to call or not call the defendant to testify is a matter of trial strategy."); *People v Tommolino*, 187 Mich App 14, 16-17; 466 NW2d 315 (1991).

According to defendant's affidavit, he would have testified similarly to Rivers that she was hitting him, that he grabbed her gun when it fell from her side, that he did not point it at Rivers, and that he discarded it before he raised his hands and the officer shot him. Defendant notes that his testimony would have supported a self-defense theory against his felon-in-possession charge because he took the gun only momentarily and out of concern that Rivers could shoot him. But again, defendant's testimony would contradict Johnson's testimony that Johnson did not see defendant with a gun and confirm Officer Wade's and Crane's testimony that defendant possessed the gun before being shot. Johnson's testimony provided defendant with a chance to be acquitted of the felon-in-possession and felony-firearm charges, whereas defendant's proposed testimony would have admitted possession of the gun and introduced the need to argue and come forward with evidence that defendant was acting in self-defense. See *People v Guajardo*, 300 Mich App 26, 40; 832 NW2d 409 (2013) (holding that self-defense is a valid defense to felon-in-possession, provided the defendant establishes the prima facie elements of self-defense); *People v Goree*, 296 Mich App 293, 303-305; 819 NW2d 82 (2012) (holding that a defendant may assert self-defense as a defense to felony-firearm). Additionally, like Rivers, defendant would have been cross-examined about the incident, including his history of conflicts with Rivers. Notably, defendant does not allege that defense counsel failed to properly inform him of the repercussions of his decision not to testify. To the contrary, in response to the trial court's inquiries, defendant personally stated that he did not wish to testify, that he had spoken with counsel regarding his decision, that no one was forcing or threatening him to make the decision not to testify, that he understood his decision not to testify, and that he specifically recognized that he could be cross-examined if he exercised his right to testify. That counsel's strategy ultimately failed does not render his performance deficient, *Petri*, 279 Mich App 412-413, and defendant has not satisfied his burden of showing that his trial counsel's advice to not testify was not sound trial strategy on this record.

## C. CONFLICT OF INTEREST

Defendant next argues that defense counsel had a conflict of interest because he had defendant "sign a paper saying that he could bring a civil suit if we won this [criminal] case."

-5-

Defendant's affidavit further states that his attorney advised him not to take a plea offer for a two-year sentence, "promising he could win the case."[7]

"The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client." *Von Moltke v Gillies*, 332 US 708, 725; 68 S Ct 316; 92 L Ed 309 (1948). MRPC 1.7(b) recognizes that a conflict of interest may arise from a lawyer's own interests and provides:

> A lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation.

In order to establish that defense counsel provided ineffective assistance on the basis of a conflict of interest, defendant must show that an actual conflict of interest negatively impacted his attorney's performance. *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998). Unlike most ineffective-assistance-of-counsel claims, "*Cuyler* [*v Sullivan*, 446 US 335; 100 S Ct 1708; 64 L Ed 2d 333 (1980),] calls for a heightened standard in conflict of interest claims," because "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Id*. at 556-557 (quotation marks and citation omitted). "This heightened standard is not a rule of prejudice per se; rather, [p]rejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id*. at 557 (quotation marks and citation omitted; alteration in original).

"Defendants are [also] entitled to the effective assistance of counsel when considering or negotiating a plea agreement." *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020), citing *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). "Defense counsel's obligation [is] to properly advise [the] defendant regarding 'the nature of the charges or the consequences of the guilty plea' and 'possible defenses to the charges to which the defendant is pleading guilty,' so [the] defendant has 'the ability to make an intelligent and informed choice from among his alternative courses of action.' " *White*, 331 Mich App at 148, quoting *People v Corteway*, 212 Mich App 442, 445; 538 NW2d 60 (1995). In a criminal case, a lawyer must "abide by the client's decision, after consultation with the lawyer, with respect to a plea to be entered . . . ." MRPC 1.2(a). "The proper remedy for ineffective assistance of counsel during plea negotiations will depend on the circumstances of the case, but it could potentially entail resentencing or requiring a rejected plea to be reoffered." *White*, 331 Mich App at 148, citing *Lafler v Cooper*, 566 US 156, 171; 132 S Ct 1376; 182 L Ed 2d 398 (2012). "When a defendant claims to be prejudiced by rejecting a plea offer on the basis of ineffective assistance of counsel,

---

[7] Defense counsel was retained to represent defendant and had previously represented defendant, securing an acquittal.

-6-

the defendant must show (1) 'that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'that the court would have accepted its terms'; and (3) 'that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.' " *Id*. at 149-150, quoting *Lafler*, 566 US at 163-164.

Assuming that defense counsel agreed to represent defendant during a future civil proceeding *if* defendant was acquitted of the criminal charges, counsel's interest would have been to successfully advocate for defendant's exoneration in the criminal matter. This, of course, aligns with counsel's motivation on defendant's behalf at trial. On the other hand, the desire for an eventual monetary reward from related civil litigation arguably could have compromised counsel's motives during plea negotiations.

The record in this case, however, reflects that defendant not only rejected the prosecution's plea offers, but also directed defense counsel not to seek a plea because defendant maintained his innocence. At a January 2019 pretrial hearing, after learning that defendant had a prior felony-firearm conviction, the prosecution offered him an opportunity to plead guilty to that charge in exchange for a five-year sentence[8] and dismissal of the remaining charges in this case. Although the offer was to remain open until May 2019, defense counsel placed the offer on the record and asked if defendant wished to accept it. Defendant responded that he did not. Seven months later, on the first day of trial, the court inquired whether the prosecution had made any final offers to defendant. The prosecutor explained that there were no offers made as "the [d]efendant doesn't want them. He[] has got multiple cases in this courtroom. This is one of another case."[9] Defense counsel confirmed the prosecutor's representation and asked to place on the record that "he [defendant] does not want me to even seek an offer . . . ." The court noted that was defendant's choice. Thereafter, defendant agreed with defense counsel's representation that he did not want a plea offer. After his conviction, defendant provided a written statement for sentencing that read: "I am innocent of the charges."

It is defendant's burden to make a testimonial record of evidence supporting his claim that " 'excludes hypotheses consistent with the view that his trial lawyer represented him adequately.' " *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997), quoting *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973). In this case, the record does not reflect a conflict of interest that negatively affected defense counsel's performance. Rather it evinces that defense counsel acted in accordance with defendant's wishes, as required by MRPC 1.2(a), by failing to pursue

---

[8] The record below does not reflect a two-year offer as alleged in defendant's affidavit, but we recognize that early on the prosecution was unaware of defendant's prior felony-firearm conviction and that, as a first offense, felony-firearm carries a mandatory two-year sentence.

[9] Defendant was separately charged with felon-in-possession of a firearm, felon-in-possession of ammunition, and two counts of felony-firearm. *People v Alexander*, Wayne County Circuit Court Docket No. 2019-002794-01-FH. We take judicial notice that defendant pleaded guilty to felon-in-possession of a firearm and felony-firearm, second offense, on the same day he was sentenced in this case. MRE 201.

and rejecting plea-bargain opportunities that were consistent with defendant maintaining his innocence. See and compare *Burt v Titlow*, 571 US 12, 20, 23-24; 134 S Ct 10; 187 L Ed 2d 348 (2013). Moreover, defendant does not actually assert that he would have accepted any such offer but for counsel's advice. *White*, 331 Mich App at 150, quoting *Lafler*, 566 US at 164. Thus, defendant has not established ineffective assistance on the basis of counsel's alleged conflict of interest.

## D. COMPETENCY

Defendant argues that defense counsel should have moved for a competency evaluation, given defendant's mental health history. Defendant asserts that he told counsel that he had been diagnosed with paranoid schizophrenia, as well as depression, and was not compliant with his medication regimen at the time of the crime.

A defendant who is incompetent "shall not be proceeded against while he is incompetent." MCL 330.2022(1). See also *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990). The due-process right to a fair trial is violated where there is a failure to "observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial . . . ." *People v Kammeraad*, 307 Mich App 98, 137; 858 NW2d 490, 502 (2014) (quotation marks and citation omitted). "[A] defendant is presumed competent to stand trial unless his mental condition prevents him from understanding the nature and object of the proceedings against him or the court determines he is unable to assist in his defense." *People v Mette*, 243 Mich App 318, 331; 621 NW2d 713 (2000), citing MCL 330.2020(1).

A duty to address the issue of incompetence arises in the trial court when facts are presented that "raise a 'bona fide doubt' as to the defendant's competence." *Harris*, 185 Mich App at 102, quoting *People v Johnson*, 58 Mich App 473, 475; 228 NW2d 429 (1975). A "bona fide doubt" exists where "a reasonable judge . . . should have experienced doubt with respect to competency to stand trial." *Kammeraad*, 307 Mich App at 138-139 (quotation marks and citation omitted). Evidence that signals a concern about a defendant's competency includes "irrational behavior, a defendant's demeanor, and a defendant's prior medical record relative to competence." *Id*. at 139. "There must be some minimal showing that the accused cannot effectively communicate with his counsel, and his inability to assist in his own defense." *People v Mowrey*, 63 Mich App 676, 678; 235 NW2d 23 (1975).

In this case, retained defense counsel and defendant were acquainted as defense counsel had earlier successfully represented defendant. From review of the presentence investigation report, counsel was aware of defendant's mental-health diagnoses and medications. The record contains no indication that defendant was previously adjudged incompetent. And review of the transcripts reveals no evidence raising concerns that defendant's mental-health conditions prevented him from understanding the nature and object of the proceedings against him or assisting in his defense in a rational manner. See *Kammeraad*, 307 Mich App at 109. Because counsel is presumed to have performed effectively, *Rodgers*, 248 Mich App at 714, defendant has not

established that counsel was ineffective for failing to question defendant's competency or that counsel's failure to do so prejudiced defendant.[10]

## E. STIPULATION REGARDING FELON-IN-POSSESSION

Regarding the felon-in-possession charge, defendant argues that defense counsel was ineffective for stipulating that defendant's prior conviction for attempted concealing or misrepresenting the identity of a motor vehicle, MCL 750.92 and MCL 750.415(2), made him ineligible to possess a firearm and that he had not fulfilled the requirements to regain eligibility to possess a firearm.

Under MCL 750.224f(1),

a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until the expiration of 3 years after all of the following circumstances exist:

(a) The person has paid all fines imposed for the violation.

(b) The person has served all terms of imprisonment imposed for the violation.

(c) The person has successfully completed all conditions of probation or parole imposed for the violation.

But, under MCL 750.224f(2), when the prior felony conviction is for a specified felony:

---

[10] To the extent that defendant suggests defense counsel should have raised an insanity defense, there is no record evidence supporting the defense. "Legal insanity is an affirmative [criminal] defense[.]" *People v Carpenter*, 464 Mich 223, 230; 627 NW2d 276 (2001). When a defendant asserts the defense, "[t]he *defendant* has the burden of proving . . . insanity by a preponderance of the evidence." MCL 768.21a(3) (emphasis added). See also *People v Lacalamita*, 286 Mich App 467, 470; 780 NW2d 311 (2009). Legal insanity means that the defendant did not have the "substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law" because of mental illness. MCL 768.21a(1). In this case, defendant does not assert that he actually lacked the capacity to conform his conduct with the law or that he did not understand the wrongfulness of his conduct due to his diagnosed conditions or noncompliance with his medication regimen. Defendant has thus failed to offer adequate support for this challenge to defense counsel's performance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) ("[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel.").

[a] person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until all of the following circumstances exist:

> (a) The expiration of 5 years after all of the following circumstances exist:
>
> > (*i*) The person has paid all fines imposed for the violation.
> >
> > (*ii*) The person has served all terms of imprisonment imposed for the violation.
> >
> > (*iii*) The person has successfully completed all conditions of probation or parole imposed for the violation.
>
> (b) The person's right to possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm has been restored under . . . MCL 28.424.

A specified felony is defined as "a felony in which 1 or more of the following circumstances exist:

> (a) An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.
>
> (b) An element of that felony is the unlawful manufacture, possession, importation, exportation, distribution, or dispensing of a controlled substance.
>
> (c) An element of that felony is the unlawful possession or distribution of a firearm.
>
> (d) An element of that felony is the unlawful use of an explosive.
>
> (e) The felony is burglary of an occupied dwelling, or breaking and entering an occupied dwelling, or arson. [MCL 750.224f(10).]

A felony includes a violation of state law "that is punishable by imprisonment for 4 years or more, or an attempt to violate such a law." MCL 750.224f(9)(b). Concealing or misrepresenting the identity of a motor vehicle is a felony. MCL 750.415(2). Because no penalty is explicitly provided for this subsection, a four-year penalty applies. MCL 750.503 ("If a person is convicted of a felony for which no punishment is specially prescribed, the person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.").

At trial, defense counsel stipulated that defendant was convicted of a previous felony and that he had not fulfilled any of the requirements to regain eligibility. The parties' stipulation, which was admitted as an exhibit, read:

> Both parties, the Defendant and his counsel of record . . . and the People of the State of Michigan, stipulate that the defendant, ISAAC "IKEY" ALEXANDER, for

purposes of the charge Felon in Possession of a Firearm has been convicted of a specified felony.

Further, the defendant did not have a right to possess a firearm on or about 10/10/18, because his requirements for regaining eligibility had not been met.

In 1996, defendant pleaded no contest to attempted concealing or misrepresenting the identity of a motor vehicle and was sentenced to three years' probation. According to the register of actions for that case,[11] the court revoked defendant's probation, after his third violation, and sentenced him to 14 to 24 months' imprisonment on March 14, 2000.

Defendant asserts that counsel was ineffective for failing to investigate his eligibility to possess a firearm. Defendant contends that his firearm rights were automatically restored as more than three years had passed since his sentence, he had paid any fines, had served his probation or imprisonment, and had successfully completed all conditions of probation or parole.

As an initial matter, defendant has provided no evidence that he completed the requirements under MCL 750.224f(1) to regain his eligibility to possess a firearm. A defendant must establish the factual predicate for a claim of ineffective assistance of counsel. *Hoag*, 460 Mich at 6. Thus, defendant's ineffective-assistance-of-counsel claim fails.

Moreover, although defense counsel's stipulation regarding the nature of the felony appears incorrect, there is no reasonable probability that counsel's alleged failure to investigate affected the outcome. MCL 750.224f(1)(c) requires a defendant "to successfully complete[] all conditions of probation or parole imposed for the violation." Review of the register of actions reflects that defendant repeatedly violated his probationary term before the court revoked his probation and sentenced him to prison. Furthermore, defendant was assessed a total of $2,367, including $1,872 in restitution, and, as of July 2021, he had paid $548.07, leaving an outstanding balance of $1,818.93. *Id*. See also *People v Parkmallory*, 505 Mich 866; 935 NW2d 49 (2019). Because defendant did not satisfy all the requirements under MCL 750.224f(1), he cannot demonstrate that counsel was ineffective for stipulating that he was ineligible to possess a firearm based on his prior felony conviction.

## III. JURY INSTRUCTIONS

Defendant argues that the trial court failed to instruct the jury that a conviction for resisting or obstructing a police officer requires proof that the officer's actions were lawful and failed to provide a sufficient limiting instruction on the use of prior inconsistent statements. Because defense counsel expressly agreed with the instructions that the trial court provided,[12] defendant waived any error. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011); *People v*

---

[11] We take judicial notice of the Wayne County Circuit Court's docket entries for Docket No. 1995-008479-01-FH. MRE 201.

[12] Although defendant did raise certain objections, he agreed to the instructions he now challenges on appeal.

*Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). We will, however, consider these issues to the extent necessary to decide defendant's claim that defense counsel was ineffective in this regard.

A defendant has the right to a properly instructed jury. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). "[T]he trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *Id*. Jury instructions are reviewed "in their entirety to determine if there is error requiring reversal." *People v McFall*, 224 Mich App 403, 412; 569 NW2d 828 (1997). "[J]ury instructions must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence." *People v Kurr*, 253 Mich App 317, 328; 654 NW2d 651 (2002). "Instructional errors that directly affect a defendant's theory of defense can infringe a defendant's due process right to present a defense." *Id*. at 326-327.

## A. OBSTRUCTING A POLICE OFFICER

To convict a defendant of resisting or obstructing a police officer, the prosecution must prove beyond a reasonable doubt that "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties," and that "the officers' actions were lawful." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted). See also *People v Quinn*, 305 Mich App 484; 853 NW2d 383 (2014).

In pertinent part, M Crim JI 13.1 reads:

> (1) The defendant is charged with the crime of assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a [police officer / (*state authorized person*)] who was performing [his / her] duties. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> (2) First, that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered [*name complainant*], who was a [police officer / (*state authorized person*)]. ["Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.] [The defendant must have actually resisted by what (he / she) said or did, but physical violence is not necessary.]
>
> (3) Second, that the defendant knew or had reason to know that [*name complainant*] was a [police officer / (*state authorized person)*] performing [his / her] duties at the time.
>
> (4) Third, that [*name complainant*] gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act. [Footnotes omitted.]

The fourth paragraph's Use Note reads: "The court should provide detailed legal instructions regarding the applicable law governing the officer's legal authority to act." *Id*.

In this case, as to the elements, the trial court instructed the jury:

First, that the Defendant assaulted or battered or wounded or obstructed or opposed or endangered Officer Wade. Obstruct includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

Second, that the Defendant knew or had reason to know that the person the Defendant assaulted or battered or wounded or obstructed or opposed or endangered was an officer performing his duties at the time.

Thus, the trial court's instruction excluded an explicit third element that the officer's command was lawful along with the court's explanation of the law authorizing Officer Wade to order defendant to drop the gun and end his assault on Rivers. Although an objection by counsel would presumably have led to a clarification of the instructions along with a detailed explanation regarding Officer Wade's authority to issue such commands, the instructions as provided required the jury to decide whether defendant knowingly failed to comply with a lawful command. At trial, defendant neither argued nor elicited evidence suggesting that Officer Wade's command that he drop the gun or end his assault were not lawful. Instead, defendant contended that he did not possess Rivers's gun and put his hands up to demonstrate he was unarmed, but Officer Wade nevertheless shot him.[13] Because Officer Wade's command was lawful under the circumstances,[14] defendant has failed to meet his burden of showing that it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Jordan*, 275 Mich App at 667. See also *People v Gaines*, 306 Mich App 289, 312-313; 856 NW2d 222 (2014) (counsel's failure to object to an instruction that lacked the required intent element was not prejudicial so as to require relief on the basis of ineffective assistance of counsel when overwhelming evidence established the necessary intent.).

## B. PRIOR INCONSISTENT STATEMENTS

Defendant argues that the trial court, in instructing the jury with regard to prior inconsistent statements, "omitted the distinction between out of court statements under oath, and not under oath," found in M Crim JI 4.5.[15] The trial court omitted a second part of the model instruction that

---

[13] To the extent that defendant suggests that he was precluded from taking testimony regarding the lawfulness of Officer Wade employing deadly force against defendant, the obstructing charge was based on the lawfulness of Officer Wade's command that defendant drop the weapon or stop his assault on Rivers.

[14] See Section V. B., *infra*.

[15] M Crim JI 4.5 provides:

You have heard evidence that, before the trial, [a witness / witnesses] made [a statement / statements] that may be inconsistent with [his / her / their] testimony here in court.

reads: "If the earlier statement was made under oath, then you may also consider the earlier statement as evidence of the truth of whatever the [witness / witnesses] said in the earlier [statement / statements] when determining the facts of this case."

Defendant makes issue of Johnson's testimony that he could not remember his recorded statement to the police at the scene of the crime, wherein he relayed that defendant had a gun. Two days later, in response to the prosecutor's investigative subpoena, Johnson reviewed and corrected his earlier statement, testifying that he did not see defendant with a gun.

During deliberations, the jury asked to see Johnson's initial statement to the police. With the parties' approval, the court instructed the jury that Johnson's written statement was not admitted and that the jurors would have to rely on their collective memories as to the content of those statements. The next morning, the jury subsequently requested Johnson's testimony, which the court provided.

Defendant argues that without the omitted instruction, the jury was able to consider Johnson's first statement to the police as substantive evidence. But Johnson's initial statement to the police was used only for cross-examination and never actually admitted into evidence. Regarding a previous inconsistent statement, the trial court specifically instructed the jury that "the only purpose for which that earlier statement can be considered by you is in deciding whether the witness testified truthfully in court. The *earlier statement is not evidence that what the witness said earlier is true*." (Emphasis added). "[J]urors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Thus, the jury could not properly have considered Johnson's statement to the police as substantive evidence and defendant's claim of instructional error regarding a prior inconsistent statement fails.

Defendant further contends that counsel was ineffective for failing to correct the trial court's omission; however, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Furthermore, given the prosecution's attempts to impeach Johnson with his prior investigative subpoena testimony, defense counsel may have strategically opted not to include the additional language, and defendant has failed to demonstrate prejudice.

Defendant also argues that trial counsel was ineffective for failing to request a self-defense instruction as to the felon-in-possession charge, M Crim JI 7.25, because he requested a self-defense instruction as to the felony-firearm charge, M Crim JI 11.34c. The record reflects that although counsel discussed self-defense as to the felon-in-possession charge, he provided the

_____

(1) You may consider an inconsistent statement made before the trial only to help you decide how believable the [witness' / witnesses'] testimony was when testifying here in court.

(2) If the earlier statement was made under oath, then you may also consider the earlier statement as evidence of the truth of whatever the [witness / witnesses] said in the earlier [statement / statements] when determining the facts of this case.

-14-

citation to the jury instruction for self-defense to the felony-firearm charge. Therefore, it is possible that trial counsel made the request, but mistakenly cited to the instruction. Regardless, the trial court declined to give the requested instruction because the evidence did not support it. First, defendant's statement that "I ain't afraid of no gun . . . would negate the argument that he was in any kind of fear." Second, there was no evidence that defendant needed the gun "to defend himself against [Rivers]" or that he had momentarily possessed it. This reasoning applies to self-defense as to the felon-in-possession charge, and defendant cannot demonstrate that counsel's performance was deficient or that there was a reasonable probability that the result of the proceedings would have been different.

## IV. PROSECUTORIAL MISCONDUCT[16]

Defendant argues that the prosecutor mischaracterized some of the testimony and impermissibly implied that she had special knowledge concerning the truthfulness of two witnesses. Preserved claims are decided on a case-by-case basis and this Court reviews the alleged conduct in context to determine whether the defendant received a fair and impartial trial. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). We review unpreserved claims for plain error affecting substantial rights. *People v Norfleet*, 317 Mich App 649, 660 & n 5; 897 NW2d 195 (2016). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763.

The prosecutor has a duty to ensure that the defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). The responsibility of a prosecutor is "to seek justice, rather than merely to convict, [and] the test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A fair trial "can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused." *Id*. at 63-64.

"A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241. And the defendant "has a right to a fair and impartial jury" with jurors who only deliberate about the "evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997).

Defendant argues that the prosecutor misrepresented Crane's testimony to the jury in order to "make . . . [defendant] . . . look like [a] bad" person. The prosecutor summarized Crane's testimony and stated that he reported that Rivers was upset that she found jewelry in defendant's car that did not belong to her. The prosecutor continued: "And, Mr. Crane indicated that the defendant's response was I can fuck who I want to. What a lovely response." But Crane's actual testimony was that, after Rivers confronted defendant about the bracelet, he responded: "Pretty

---

[16] This Court has explained that a fairer label for most claims of prosecutorial misconduct is "prosecutorial error," as only the most extreme cases rise to the level of "prosecutorial misconduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). To the extent we use the phrase "prosecutorial misconduct," it is as a term of art.

much he can do what he want to do. It's his car, and he can do whatever he want to do." And, when the prosecutor inquired whether defendant used "any bad words," Crane testified that defendant said, "Bitch, I do whatever I want to do." Accordingly, the prosecutor's statement that Crane reported that defendant's response to Rivers was "I can fuck who I want to," was not an accurate quotation, but rather a crude paraphrase, of Crane's "Bitch, I do whatever I want to."

Despite the prosecutor using a different expletive, in a different location in the quotation, the sentiment behind both versions is the same. According to Crane, defendant used harsh language and expressed that he was free to do as he pleased. The prosecutor likewise expressed that defendant responded that he could do as he pleased, and both versions were offered in response to the suggestion by Rivers that defendant had been unfaithful, implying that the subject of defendant's statement was his romantic activity. Finally, the prosecutor did not assert that she was quoting defendant verbatim, but was recalling what Crane indicated was defendant's response. Therefore, the prosecutor's misquotation did not unfairly characterize Crane's quotation of defendant's remark to Rivers. Although defendant contends that the prosecutor misquoted Crane only to portray defendant in a negative light, the remarks were a fair characterization of Crane's report of defendant's statements, even if not a verbatim recitation.

Regardless, any error did not affect defendant's substantial rights. *Cooper*, 309 Mich App at 88. The trial court instructed the jury that the attorneys' arguments were not evidence and that it should make its decision based solely on the properly admitted evidence. "Jurors are presumed to follow their instructions." *Graves*, 458 Mich at 486. And "instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Defendant also argues that the prosecutor committed misconduct by commenting, on redirect examination of Officer Wade, that "[defense] counsel keeps using the words killed or murder, or how ever he put it." Defense counsel objected that he "never used the word murder," but admitted he said "kill." The prosecutor retorted: "Murder his client, that's what he said." The court instructed the prosecutor to move on, implicitly sustaining defense counsel's objection. Defendant now asserts that the prosecutor used the word "murder" to portray his counsel in a negative light.

Initially, the prosecutor's comment was in response to several questions from defense counsel to Officer Wade that included the word "kill." Defense counsel's cross-examination suggested that Officer Wade tried to kill defendant because Officer Wade was trained to shoot to kill a person who was a threat. At first, the prosecutor recognized that defense counsel may have used "kill" instead of "murder" or used other like terminology. Because these words have similar meaning, using "murder" as part of the question did not unfairly place defense counsel in a negative light. But, as defense counsel's objection made plain, he did not use the word "murder" when cross-examining Officer Wade. This led the prosecutor to insist that he had, even though review of the record confirms that he had not.

Despite the prosecutor's misstatement, we cannot conclude that this single remark deprived defendant of a fair trial. First, the jury heard defense counsel insist that he had chosen his words carefully, and, in fact, he returned to using the word "kill" on re-cross. Second, the trial court in effect sided with defense counsel by directing the prosecutor to move on. Third, the trial court instructed the jurors that their decision had to be based on the evidence presented and that "[t]he

-16-

lawyers' statements . . . [were] not evidence." Again, we presume that the jury followed the court's instructions. *Graves*, 458 Mich at 486. Thus, the prosecutor's isolated references to "murder" did not deprive defendant of a fair trial. *People v Miller*, 482 Mich 540, 555; 759 NW2d 850 (2008) (cleaned up) ("A litigant is entitled to a fair trial but not a perfect one for there are no perfect trials."); *Unger*, 278 Mich App at 239 ("The inaccurate prosecutorial remark was isolated, brief, and did not affect the outcome of defendant's trial.").

Defendant also argues that the prosecutor's closing remarks about Johnson's testimony constituted misconduct. Defendant contends that the prosecutor said that Johnson left his car only when he saw that defendant had a gun, in contrast to Johnson's trial testimony that he left his vehicle and yelled at defendant and Rivers to stop because they bumped into his car while tussling.

A prosecutor's comments must be read as a whole and evaluated in context, including the defense arguments and the relationship that they bear to the evidence. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). A prosecutor is free to comment on her own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of defendant's guilt depends on which witnesses the jury believes. *Id.* at 455. Moreover, prosecutors are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236.

During her closing argument, after the prosecutor summarized Johnson's testimony, she stated: "I'll [sic] going to submit to you that Mr. Johnson got out of that car during that because he did see the slapping, it was violent, he did see a gun, and he got out of there, just like Mr. Crane told you." Thus, the prosecutor reviewed the evidence and explained why the jury should infer that Johnson left his vehicle because he saw a gun. The prosecutor discussed Johnson's testimony concerning the location and intensity of the fight, and contrasted it with evidence that the fight was intense, that Johnson was near the fight, and that his reaction was excited. The prosecutor noted that Johnson initially told the police that he saw defendant with Rivers's gun in his hand, a statement that she recognized that he later changed; however, he also indicated that he did not want to be shot accidently. For these reasons, the prosecutor suggested to the jury that Johnson may have actually seen the gun. In doing so, the prosecutor properly urged the jury to consider the reasonableness of Johnson's testimony given the other witnesses' testimony and the evidence. As the prosecutor's argument asked the jury to draw a reasonable inference from the evidence, there was no error.[17]

Defendant next argues that the prosecutor impermissibly implied that she had special knowledge regarding the truthfulness of two witnesses. A prosecutor may not "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Such commentary could influence the jury to decide the case on the basis of the prosecutor's special knowledge and not on the evidence presented. *People v Bennett*, 290 Mich App 465, 477; 802 NW2d 627 (2010).

---

[17] Although the prosecutor mentioned Johnson's initial statement to the police during her argument as one of the reasons why Johnson saw defendant with the gun, we again note that the trial court properly instructed the jury that Johnson's prior inconsistent statement could only be used for impeachment.

Further, the prosecutor may not vouch for a witness's credibility by asserting the prosecutor's integrity or the prestige of the position. *People v McGhee*, 268 Mich App 600, 633; 709 NW2d 595(2005). A prosecutor's statement about the credibility of a witness may infringe on the "exclusive province of the jury" to determine credibility, particularly given the importance of the prosecutor's position. *People v Erb*, 48 Mich App 622, 631-632; 211 NW2d 51 (1973).

Arzenia Williams testified that she saw defendant chasing Rivers and they went to the ground; at that point, she could not see anything more because her vision was obscured. The prosecutor then asked Williams whether she remembered speaking with her and an officer earlier that morning, which Williams affirmed. The prosecutor then asked Williams whether she gave them a description about what she had seen "by the side of the car." Williams repeated that she could not see behind the car. The prosecutor then twice asked what Williams saw and heard. Williams answered that she heard Rivers say "stop," but maintained that she did not or could not "really see" defendant. The prosecutor again asked what Williams could see. Williams replied she saw "[n]othing" as "they [were] behind the car, on the side of the car." Williams further denied seeing defendant make any motions. The prosecutor again asked whether Williams remembered talking to her and the officer, and whether Williams remembered telling them what she saw. Before Williams could respond and as the prosecutor was about to repeat Williams's earlier statement, defense counsel objected that the prosecution was leading the witness. After the prosecutor indicated her questions were relevant and that she was attempting to refresh Williams's recollection, the trial court sustained defense counsel's objection. The prosecutor again asked if Williams remembered talking to her and the officer, which Williams again affirmed. The prosecutor then asked if Williams relayed "some information about what [she had seen] that day by the car." Williams responded: "What I just said." The prosecutor then asked whether Williams remembered her asking whether she saw any motions. Defense counsel again objected that Williams had repeatedly "testified that she could not see what was going on" and suggested that if prosecutor had a written statement from Williams, she could use it to refresh her recollection. If not, defense counsel asked the prosecutor "to move on." Thereafter, the trial court directed the prosecutor to move on. The prosecutor then asked what Williams did during the incident. Williams said that she hollered. Asked what she hollered, Williams responded, "Stop." Asked why she hollered stop, Williams replied: "Because he was over there – he was over there in the motion like hitting her." Williams described fists flying, and, later, when the court asked what she saw, Williams testified that "he was hitting her."

During this exchange, the prosecutor never made a statement about Williams's truthfulness; instead, she attempted to elicit evidence of statements Williams made during an earlier interview. "Prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 661; 608 NW2d 123 (1999), citing *People v Missouri*, 100 Mich App 310, 328; 299 NW2d 346 (1980). And despite Williams repeatedly testifying that she had seen nothing, she eventually testified to what she saw—flying fists and defendant hitting Rivers.

Furthermore, defendant has not shown that his substantial rights were affected. *Cooper*, 309 Mich App at 88. The trial court instructed the jury that they should decide the matter on the evidence presented, that "[t]he lawyers' questions to the witnesses . . . [were] . . . not evidence," and that the jury "should consider [the lawyers'] questions only as they give meaning to the

-18-

witnesses' answers." Again, the jury is presumed to follow the court's instructions, *Graves*, 458 Mich at 486, and we have no reason to doubt that it did so.

Defendant further argues that the prosecutor impermissibly implied that she had special knowledge of Johnson's lack of truthfulness during closing argument by stating that she had to "pull out those past transcripts" to impeach Johnson's statement that he did not see defendant with a gun. But the prosecutor did not suggest special knowledge simply by referring to evidence that had been previously admitted. Johnson had testified that he spoke with the police the night of the incident, and it was recorded, even though he could not recall telling the police that he saw defendant with a gun. When Johnson spoke with the prosecutor two days later, he promptly corrected his recorded statement to read that he did not see defendant with a gun. Therefore, the prosecutor's comment in closing that she had to go to the investigative subpoena transcript did not imply special knowledge regarding Johnson's testimony. And a prosecutor does not commit misconduct by commenting on evidence produced at trial, even when it involves the credibility of her own witness.[18] *Thomas*, 260 Mich App at 455.

To the extent that defendant asserts that counsel was ineffective by failing to object to the alleged instances prosecutorial misconduct, we disagree. We have concluded that there was no misconduct; therefore, any objection would have been futile. Counsel is not ineffective for failing to raise a meritless objection. *Ericksen*, 288 Mich App at 201. In any event, we cannot conclude that defendant has met his burden of establishing that counsel performed deficiently or that there was a reasonable probability that the outcome of the proceedings would have been different. *Unger*, 278 Mich App at 253 ("Declining to raise objections can often be consistent with sound trial strategy."); *Jordan*, 275 Mich App at 667.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant contends that his convictions of felonious assault and domestic violence were not supported by sufficient evidence. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *Ericksen*, 288 Mich App at 195. Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt. *People v Beck*, 504 Mich 605, 620; 939 NW2d 213 (2019). To determine if the prosecutor produced evidence sufficient to support a conviction, an appellate court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' " *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from it, are considered to determine whether the evidence was sufficient to sustain a conviction. *Hardiman*, 466 Mich at 428.

---

[18] Defendant also argues that the prosecutor's questioning of Johnson about his statement to the police was improper impeachment on the ground that "[u]se of the officer-written statement was improper impeachment, as it was hearsay." Under MRE 613, impeachment is permitted when a witness' out-of-court statement is inconsistent with the witness' in-court testimony.

## A. FELONIOUS ASSAULT AND DOMESTIC VIOLENCE

Felonious assault requires "the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013) (quotation marks and citation omitted). Domestic violence requires an assault or an assault and battery. *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011). Battery is the "intentional, unconsented and harmful or offensive touching" of another person. *Id*. (quotation marks and citation omitted). An assault is either an attempt to commit a battery or an unlawful act that places another in the reasonable apprehension of an immediate battery. *Id*.

Defendant suggests that he could not have intended to harm Rivers because he and Rivers were engaged in a mutual struggle. "The theory of 'mutual fight' may be asserted . . . to characterize the affray for purposes of negating a specific intent such as the intent to do great bodily harm." *People v Sherman*, 14 Mich App 720, 722; 166 NW2d 22 (1968). Thus, it appears that defendant only challenges the evidence regarding the intent necessary to support his felonious assault and domestic violence convictions. Viewing the evidence in the light most favorable to the prosecution, however, the descriptions of defendant's actions gave rise to a reasonable inference that he intended to injure Rivers. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Despite Crane and Johnson's testimony that defendant and Rivers were initially physically aggressive with each other, Williams heard Rivers screaming and hollering as defendant hit her and heard Rivers say "stop." Officer Wade heard Williams banging her cane and frantically yelling "stop beating that woman." Crane testified that Rivers's friend was trying to pull defendant off Rivers and that he too heard Williams screaming. Others witnessing the incident were likewise telling defendant to stop without success. And Crane further described defendant as "manhandling" and "pummeling" Rivers by hitting her head on the ground.

The jury could also infer defendant's intent from his use of a deadly weapon. *Carines*, 460 Mich at 759. Crane testified that he stopped approaching the pair when he saw that defendant had a gun pressed to Rivers's head. Defendant then said, "[B]itch, I'll kill you," while shaking and grabbing Rivers.

Officer Wade also heard Rivers crying and repeatedly screaming, "[Y]ou're going to shoot me," and saw defendant on top of Rivers, moving her in the mud with his hand on her hair and not letting her up. Officer Wade recounted that defendant was pointing a gun at Rivers's head and yelling at her aggressively. Defendant continued to control Rivers by grasping her hair as she tried to stand when Officer Wade identified himself. According to Officer Wade, defendant stood over Rivers with the gun pointed at her head and said, "[S]ee what you got me doing."

Thus, even though Crane and Johnson testified that, at first, defendant and Rivers had hit each other, the jury was entitled to determine the witnesses' credibility in deciding the facts of the case. This Court does "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence . . . ." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (citation omitted). Rather this Court must "draw all reasonable inferences and make

credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). In this case, the testimony and evidence presented were sufficient to demonstrate that defendant possessed the required intent to commit both domestic violence and felonious assault.

## B. OBSTRUCTING A POLICE OFFICER

Defendant also argues that there was insufficient evidence to support his conviction of resisting and obstructing a police officer because there was no evidence that Officer Wade's actions were lawful.[19] We disagree.

Both Williams and Crane testified that Officer Wade approached defendant and Rivers, displayed his badge, announced himself as an officer, and ordered defendant to disarm without success. Officer Wade similarly reported that he responded to defendant pointing a gun to Rivers's head by displaying his badge, announcing that he was a police officer, and demanding, at least three times, that defendant put the weapon down before defendant looked at him. Officer Wade further recalled that defendant "looked directly at my badge, looked at me, and immediately yelled, 'I don't give a fuck who you are,' " as defendant continued to physically dominate Rivers with the gun to her head. And, as Officer Wade continued to hold his badge in his hand, he yelled at defendant to stop.[20] At that point, defendant looked at Rivers, while the gun was pointed at her head, and said, "[S]ee what you got me doing." Officer Wade observed Rivers continuing to struggle and believing that defendant, who had not complied with his repeated commands, would shoot her, Officer Wade retrieved his department-issued handgun and fired two shots at defendant.

Thereafter, Officer Wade followed the protocol for an officer-involved shooting. Officer Wade was required to provide a *Garrity*[21] statement regarding the incident and to surrender his service weapon while his decision to fire his handgun was investigated.

In the context of civil governmental tort immunity, our Supreme Court recognizes:

> Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, *e.g.*, make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-

---

[19] As noted, the lawfulness of the officer's actions is an element of resisting or obstructing a police officer. *Vandenberg*, 307 Mich App at 68.

[20] Officer Wade specifically recalled yelling so loudly that he was hoarse the next day.

[21] *Garrity v New Jersey*, 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967). Under *Garrity*, a police officer's statement made under threat of employment discipline or discharge cannot be used against the officer criminally regarding the incident being investigated.

decisional act entitled to immunity. [*Zavala v Zinser*, 420 Mich 567, 659-660; 363 NW2d 641 (1984).]

Likewise, in a criminal context, the United States Supreme Court recognizes

the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm. [*Terry v Ohio*, 392 US 1, 24; 88 S Ct 1868; 20 L Ed 2d 889 (1968).]

Our Supreme Court applied this language from *Terry* in a case where officers were dispatched to a call of a man firing shots. *People v Stergowski*, 391 Mich 714, 716; 219 NW2d 68 (1974). When the officers arrived, the defendant ran in front of their patrol car, carrying a pistol. *Id*. One of the officers ordered defendant to drop his weapon, but he did not; instead, he ran into a house. *Id*. The police pursued and the defendant further resisted. *Id*. The trial court denied the defendant's motion to suppress the incriminating evidence the police seized after subduing him. *Id*. at 717. Relying on *Terry*, the Court held that "it was proper for the officers to order [the] defendant to drop the weapon. Failure to so order would have been imprudent, if not a dereliction of duty." *Id*. at 719-720. The Court then explicitly held that "[t]he police had the authority to order defendant to stop and drop the pistol." *Id*. at 720. The Court went on to hold that exigent circumstances exception to the Fourth Amendment applied and did not " 'require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others.' " *Id*., quoting *Warden v Hayden*, 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967). As speed was essential and the officers had reason to conclude that the defendant was a danger, the police "had ample cause to take those measures necessary to insure that [the] defendant did not cause injury to anyone." *Stergowski*, 391 Mich at 720-721. The Court concluded that "[t]he police had authority to stop [the] defendant on the street and disarm him." *Id*. at 721.

Viewing the evidence in the light most favorable to the prosecution, defendant presented a grave danger to Rivers. Officer Wade heard a commotion and Williams imploring defendant to stop beating Rivers. As Officer Wade came closer, he heard Rivers crying and repeatedly screaming "you're going to shoot me." Like Crane, Wade saw that defendant was armed with a weapon and was pointing it at Rivers's head as she struggled to escape his grasp. Given the need for immediate action in this emergency situation, the evidence was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Officer Wade's repeated commands to defendant to drop the gun or stop his assault on Rivers were lawful.

Defendant further asserts that there was insufficient evidence that he "had time to 'ha[ve] reason to know that' the off[-]duty officer was an officer 'performing his duties.' " As just discussed, however, defendant knew or had reason to know that Officer Wade was a police officer. Officer Wade announced himself as a police officer and displayed his badge. According to Officer Wade, defendant's response was that he simply did not care. Moreover, Officer Wade continued

to display his badge and gave defendant an additional opportunity to stop his assault on Rivers, but he did not.

Regarding Officer Wade's off-duty status, our Supreme Court has held that for purposes of the resisting and obstructing statute, a police officer is 'a member of a police force,' and the term 'police force' [is] . . . 'a body of trained officers entrusted by a government with maintenance of public peace and order, enforcement of laws, and prevention and detection of crime.' " *People v Feeley*, 499 Mich 429, 437; 885 NW2d 223 (2016), quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). There was no dispute that Officer Wade, a twenty-year veteran of the Detroit Police Department, was a police officer. And caselaw recognizes that when an off-duty officer intervenes in a life-threatening situation, he "fulfill[s] his duty to protect the general public" and his actions may be protected by governmental immunity. See *Brown v Shavers*, 210 Mich App 272, 275-277; 532 NW2d 856 (1995); *Moore v Detroit*, 128 Mich App 491, 496-498; 340 NW2d 640 (1983). Viewing the evidence in the light most favorable to the prosecution, Officer Wade encountered such a situation and performed his duty. Despite acknowledging Officer Wade's presence and repeated orders to disarm, defendant defied them. Accordingly, this record contains sufficient evidence for a reasonable jury to determine that defendant knowingly failed to comply with a police officer's lawful command.

## VI. SENTENCING

Defendant argues that his sentences are unreasonable and disproportionate because he was shot for having a loud, public argument with Rivers—one she admitted to starting.

This Court reviews whether a trial court properly imposed a sentence that was proportionate to the offender and offense for an abuse of discretion. See *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). A trial court abuses its sentencing discretion when the sentence imposed by the trial court is disproportionate to the seriousness of the circumstances involving the offense and the offender. *Id*. at 636. "A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant." *People v Lampe*, 327 Mich App 104, 125; 933 NW2d 314 (2019). " 'If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.' " *People v Posey*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 345491, 346039, and 351834); slip op at 8, lv pending, quoting MCL 769.34(10).

Here, defendant's minimum sentencing guidelines range was 2 to 34 months for the felonious assault conviction, 0 to 34 months for the obstructing a police officer conviction, and 5 to 46 months for the felon-in-possession conviction. The trial court sentenced defendant to 2 to 15 years' imprisonment for each of those three convictions. The three felony-firearm, second offense, convictions carry a mandatory five-year sentence. MCL 750.227b(2). Accordingly, the minimum sentence for each conviction is within the guidelines range and presumptively proportionate. *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018). Defendant has not established any unusual circumstances to show that the sentences are disproportionate, *id*., nor does he challenge the scoring of the guidelines or the accuracy of the information used by the trial court at sentencing, *Posey*, ___ Mich App at ___; slip op at 8.

To the extent that defendant challenges the proportionality of his consecutive sentences, "where a defendant receives consecutive sentences and neither sentence exceeds the maximum punishment allowed, the aggregate of the sentences will not be disproportionate . . . ." *People v Miles*, 454 Mich 90, 95; 559 NW2d 299 (1997). Here, the consecutive sentences were for the felony-firearm, second-offense, convictions, that carry a mandatory five-year sentence. Accordingly, the consecutive nature of the remaining sentences within the guidelines did not render them disproportionate. *Id*.

Affirmed.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly